**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SYNNOVA INSCORE, STEPHANIE CLOOS, and                    PLAINTIFFS
DAPHNE MCCOY

v.                              Case No. 4:08CV00337 JLH

CAPTAIN DAVID DOTY; LIEUTENANT JIM DIXON;
SERGEANT MARVIN POWELL; LIEUTENANT
TIMOTHY HIBBS; SHERIFF CHARLES "DOC"
HOLLADAY; MAJOR BOB SCARBOROUGH;
CAPTAIN KIRK LANE; CHIEF MIKE LOWRY;
J.P. MASSIET; FORMER CHIEF DEPUTY
SKIPPER POLK; FORMER SHERIFF RANDY JOHNSON;
SERGEANT JAMES KING; and FORMER MAJOR
JACKIE GOODSON, individually and in their official capacities;
and PULASKI COUNTY, ARKANSAS                             DEFENDANTS

**<u>OPINION AND ORDER</u>**

Plaintiffs Synnova Inscore, Stephanie Cloos, and Daphne McCoy commenced this action

against defendants alleging violations of 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of

1993.  Plaintiffs have moved for partial summary judgment, seeking summary judgment on liability

on their claims for sex discrimination and for retaliation.  Defendants have also moved for partial

summary judgment, asking that this Court limit plaintiffs' evidence in the case to that which is not

barred by the applicable statutes of limitations.  For the following reasons, both motions for partial

summary judgment are denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

In defendants' motion for partial summary judgment, they ask that this Court enter an order defining the applicable statutes of limitations and limit plaintiffs' evidence to that which is not barred by the applicable statutes of limitations. The plaintiffs are employees of the Pulaski County Sheriff's Office. The amended complaint alleges that the defendants discriminated against them based on their sex and retaliated against them for complaining of sex discrimination.

Synnova Inscore began employment with the sheriff's office on March 20, 2000. She filed her EEOC charge against the sheriff's office on June 20, 2007, alleging sex-based harassment and retaliation. On June 24, 2007, she was suspended without pay for three days and demoted from sergeant to deputy. On August 8, 2007, she amended her EEOC charge to reflect her suspension and demotion, and the EEOC sent her right to sue letter on January 15, 2008. Stephanie Cloos filed her EEOC charge on October 4, 2007, alleging that she was denied a promotion because of her sex, and giving the range of dates when the discrimination took place as from August 14, 2007, to

September 20, 2007.  The EEOC sent Cloos her right to sue letter on July 31, 2008.  Daphne McCoy began employment on October 30, 2000, as a detention clerk; she became a deputy sheriff on September 12, 2005.  McCoy filed her EEOC charge on August 7, 2008, and the EEOC sent her right to sue letter on December 30, 2008.

In support of their motion for partial summary judgment, the defendants argue that the dates of filing of the original complaint, amended complaint, and EEOC charges should set the limitations periods for plaintiffs' claims.  Defendants assert that employees are barred from filing a Title VII action for acts of discrimination that occurred more than 180 days before the filing of their EEOC charge, and that all of plaintiffs' claims that fall outside the applicable statutes of limitations are barred and should be excluded as evidence at trial.  Citing to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), defendants contend that plaintiffs' claims are based on discrete acts of discrimination and that combined discrete acts do not constitute a hostile work environment, which would allow plaintiffs to introduce evidence of prior acts under the continuing violation doctrine.  Defendants also cite to *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000), in which the Eighth Circuit held that the prior acts offered by the claimant did not establish a hostile work environment because a majority of her problems stemmed from inter-office politics and personality conflicts instead of race-based animus.  Defendants say that *Bradley* is on point with this case insofar as plaintiffs have alleged instances of harassment that really arise out of work issues, rather than out of race-based animus.  Defendants thus conclude that any evidence of acts occurring more than 180 days prior to the filing of the EEOC charges is time barred and should not be admitted at trial, or should be admitted with an appropriate limiting instruction.

3

Plaintiffs dispute defendants' characterization of the statutes of limitations on plaintiffs' claims.  Plaintiffs say that their claims under 42 U.S.C. § 1983 have a three year statute of limitations.  Plaintiffs say that their retaliation claims under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-108, have either a three year statute of limitations as in the personal injury statute of limitations, or a five year statute of limitations as in Ark. Code Ann. § 16-56-115.  Finally, Plaintiffs say that their claims for sex discrimination under Ark. Code Ann. § 16-123-107(c)(3) must have been brought within one year after the alleged employment discrimination occurred, or within ninety days of their EEOC right to sue letters.

Thus, plaintiffs conclude that Inscore may bring a claim for sex discrimination or retaliation under § 1983 based on acts that occurred as far back as April 2005; that she may bring a claim for retaliation under the Arkansas Civil Rights Act for acts that occurred as far back as April 2005 or April 2003; and that she may bring a claim for sex discrimination under the Arkansas Civil Rights Act based acts that occurred as far back as April 2007, or relating back more than 180 days before the filing of her EEOC charge.  Cloos argues that her § 1983 claims can be based on actions that occurred as far back as September 2005; that her claims for sex discrimination under the Arkansas Civil Rights Act can be based on acts that occurred as far back as September 2007; and that her Title VII claims can be based on acts that occurred more than 180 days before the filing of her EEOC charge.  Finally, because McCoy filed suit in September 2008 and filed her EEOC charge on August 7, 2008, she says that her claims under § 1983 and for retaliation under the Arkansas Civil Rights Act can be based on acts that occurred as far back as September 2005; that her Title VII claim can be based on incidents that occurred more than 180 prior to when she filed her EEOC charge; and

4

that her discrimination claims under the Arkansas Civil Rights Act can be based on acts that occurred as far back as September 2007.

Plaintiffs also argue that evidence of past discriminatory acts is relevant and admissible to show intent.  Plaintiffs cite the Court to a number of cases in which the Eighth Circuit allowed evidence relating to discriminatory acts that occurred prior to the accrual of the applicable statute of limitations.  *See White v. Honeywell, Inc.*, 141 F.3d 1270 (8th Cir. 1998); *Duckworth v. Ford*, 83 F.3d 999 (8th Cir. 1996); *Brine v. Univ. of Iowa*, 90 F.3d 271 (8th Cir. 1996); *Phillip v. ANR Freight Systems, Inc.*, 945 F.2d 1054 (8th Cir. 1991); *Hawkins v. Hennepin Technical Ctr.*, 900 F.2d 153 (8th Cir. 1990); *Baggett v. Program Resources, Inc.*, 806 F.2d 178 (8th Cir. 1986).  Plaintiffs also argue that evidence of past discrimination is relevant to the issue of punitive damages, that is, whether the defendants acted with malice or reckless indifference to defendants' federally protected rights.  *See Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 889 (8th Cir. 2008).

Federal Rule of Evidence 404(b) provides that evidence of other wrongs or acts may be admissible as proof of motive or intent.  The Eighth Circuit has said that "because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial."  *ANR Freight Systems*, 945 F.2d at 1056 (quoting *Hennepin Technical Ctr.*, 900 F.2d at 155-56).  "[T]he admission of such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."  *Id.* (quoting *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988)).

Here, defendants' motion for partial summary judgment is essentially a motion in limine seeking to exclude any evidence relating to acts or incidents that occurred prior to 180 days before

5

plaintiffs filed their respective EEOC charges.  Other than their blanket request that any and all prior acts be excluded as evidence at trial, defendants do not specify which incidents they seek to have excluded at trial or explain why those incidents should be excluded from evidence.  The Eighth Circuit case on which they rely, *Bradley*, dealt with whether to grant summary judgment on a claim for hostile work environment, not whether the employee's proffered evidence was admissible or relevant to her claims for sex discrimination or retaliation.  *Bradley*, 232 F.3d at 631-32.

"It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind" an adverse employment action against an employee who is a member of that group.  *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995) (citing *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).  In this case, evidence of prior discriminatory conduct, even conduct occurring more than 180 days before plaintiffs filed their respective EEOC charges, could be relevant to show that defendants acted with a discriminatory motive or intent.  Because defendants' motion in limine does not seek to exclude any specific incidents or acts that plaintiffs will attempt to introduce at trial, and because the motion argues only that certain evidence should be excluded based on the applicable statutes of limitations, the Court is unable to determine at this point whether the proffered evidence should be excluded for some other reason, such as because of unfair prejudice or confusion.  *See* FED. R. EVID. 403.  But pursuant to Federal Rule of Evidence 404(b) and Eighth Circuit law as stated in *ANR Freight Systems, Inc.*, this Court will not exclude before trial evidence of prior wrongs or acts that may be relevant to show that defendants acted with a discriminatory motive or intent.

6

## III.

In plaintiffs' motion for partial summary judgment, they ask that this Court grant summary judgment on the issue of liability regarding their claims for sex discrimination and retaliation.

### A.   SEX DISCRIMINATION

Plaintiffs say that Lt. Jim Dixon, the one who decided whom to hire as an investigator in the narcotics unit, admitted that he did not hire Cloos because he wanted a black male.  Plaintiffs assert that the investigation unit already had males; that women could perform undercover work; that the male deputy who was transferred had only two months' experience with the sheriff's office; that Cloos had been that male deputy's field training officer; and that Cloos had significant experience in infiltrating methamphetamine labs.  Thus, plaintiffs conclude that summary judgment should be granted against Pulaski County and Lt. Dixon individually on the issue of liability for her sex discrimination claims under § 1983 and the Arkansas Civil Rights Act.  Furthermore, plaintiffs argue that summary judgment should be granted individually against J.P. Massiet, insofar as he admitted that he was assigned to train Cloos; was unapproachable and refused to train or speak to her; and did not allow her to conduct interviews, even though he usually allowed new investigators to conduct interviews, all in violation of Ark. Code Ann. § 16-123-108(b).

Defendants respond that a genuine issue of material fact exists regarding whether Cloos was the most qualified person to meet the needs of the narcotics investigation unit in August 2007, whether Cloos's EEOC charge was causally linked to Massiet's conduct, and whether his behavior was materially adverse to her employment.  Defendants concede that Deputy Steven Briggs, the black male whom Lt. Dixon hired for the investigations unit, had less experience than Cloos and that Cloos was successful in infiltrating meth labs.  However, defendants contend that by 2007 meth was

7

no longer the problem that it once was in Pulaski County, due in part to the effect of laws limiting the availability of pseudoephedrine.  Defendants argue that the investigations unit needed a narcotics investigator who could penetrate the subculture of crack cocaine dealers, and that Briggs was the most qualified applicant for that need.

Although Lt. Dixon may have selected Briggs because he was a male, an employer may treat employees differently based on sex when sex is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business."  *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1025 (8th Cir. 2007) (citing 42 U.S.C. 2000e-2(e)).  "No violation of Title VII exists . . . if the employer can show that the challenged employment practice is a bona fide occupational qualification (bfoq)."  *Chambers v. Omaha Girls Club, Inc.*, 834 F.2d 697, 703 (8th Cir. 1987).  The employer bears the burden of proof that a discriminatory qualification is a BFOQ.  *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 221-22, 111 S. Ct. 1196, 1215, 113 L. Ed. 2d 158 (1991).  The BFOQ exception is construed narrowly.  *See Olsen v. Marriott Int'l, Inc.*, 75 F. Supp. 2d 1052, 1060-63 (D. Ariz. 1999) (summarizing BFOQ defense standards).  The formulation for evaluating whether an employment practice is a BFOQ includes: "whether the *essence* of the business operation would be undermined without the challenged employment practice; whether safe and efficient performance of the job would be possible without the challenged employment practice; and whether the challenged employment practice has a manifest relationship to the employment in question."  *Omaha Girls Club*, 834 F.2d at 704 (internal quotes and citations omitted).

Here, Defendants have submitted an affidavit of Lt. Dixon, in which he states that in August 2007 the Pulaski County Sheriff's Office determined that trafficking in crack cocaine was on the rise

in Pulaski County, and that a significant majority of that trafficking was taking place in black communities.  Dixon stated that the sheriff's office needed a narcotics investigator who could successfully infiltrate the crack cocaine subculture, and that Briggs, as a young black male, would be more likely to be trusted by the targeted crack cocaine dealers.  Dixon also stated that Briggs was favored for the position because known crack cocaine dealers did not yet suspect him of being a law enforcement officer and that he, of all the candidates, could most effectively look and act the part of a crack cocaine dealer.  Although Dixon did state in deposition testimony that he "needed a young black male to work undercover," he immediately gave a reason for that comment: "and [Briggs] best fit the needs for the division at the time."[1]

As the movant for partial summary judgment, plaintiff Cloos bears the burden of showing that there is no genuine issue of material fact as to the issue of whether Dixon or Pulaski County discriminated against Cloos based on her sex.  Defendants have presented sufficient evidence, in the form of Dixon's affidavit and deposition testimony, that raises a genuine issue of material fact as to Dixon's motivation in hiring Briggs rather than Cloos, and as to whether his decision was based on a bona fide occupational qualification.  There is a genuine issue of material fact as to whether being a young black male was an essential qualification to the investigation unit's business of infiltrating the culture of crack cocaine dealers, and whether the essence of the unit's business would have been

---

[1] Dixon also stated that Briggs was selected out of consideration for officer safety, since he was the candidate most likely to be trusted by the targeted dealers.  However, the BFOQ defense cannot be applied based solely on the argument that the discriminatory practice is necessary to protect the safety of excluded employees.  *See Dothard v. Rawlinson*, 433 U.S. 321, 333-34, 97 S. Ct. 2720, 2728-30, 53 L. Ed 2d 786 (1977) ("In the usual case, the argument that a particular job is too dangerous for women may appropriately be met by the rejoinder that it is the purpose of Title VII to allow the individual woman to make that choice for herself.").

undermined by the hiring of a female investigator.  Although defendants' proffered reasons may ultimately be insufficient to establish a BFOQ defense, that fact issue is for a jury to decide.

## B.   RETALIATION

Plaintiff Cloos also moves for partial summary judgment on the issue of liability on her retaliation claims against Pulaski County and Massiet.  Cloos says that Massiet has admitted that he was angry that Cloos filed an EEOC charge; that he was assigned to train Cloos, was unapproachable, refused to train her, and refused to speak to her; and that he did not allow Cloos to conduct interviews even though he normally allowed new investigators to conduct interviews.  Thus, Cloos concludes that Massiet has admitted that he retaliated against her for filing an EEOC charge.

Defendants acknowledge that filing an EEOC charge and complaining of a hostile working environment are protected activities under Title VII.  Defendants assert that Massiet could not have retaliated against Cloos as a matter of law because he had no decision-making authority over her employment.  Furthermore, defendants assert that even if Cloos's allegations are true, those facts are insufficient to sustain an actionable claim for retaliation.  In support, defendants cite the Court to *Higgins v. Gonzales*, 481 F.3d 578 (8th Cir. 2007), in which the Eighth Circuit held that (1) job reassignments involving nothing more disruptive than mere inconvenience or alteration of job responsibilities without diminution in title, salary, or benefits do not constitute adverse employment actions, and (2) the employee's allegations that she was denied supervision or mentoring did not constitute an adverse employment action because she could not show that she received any decrease in pay, benefits, or future career prospects, or that she was ever denied a requested training opportunity.  *Higgins v. Gonzales*, 481 F.3d 578, 585, 590-91 (8th Cir. 2007).  Defendants argue that, like in *Higgins*, Cloos's allegations do not rise to the level of an adverse employment action.

10

To establish a claim for retaliation under § 1983 or Title VII, a plaintiff must show: "(1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Higgins*, 481 F.3d at 589. Instead of a plaintiff having to show that she suffered an adverse employment action, she must show that the challenged action was materially adverse, meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)). Liability under 42 U.S.C. § 2000e(b) attaches only to employers, not to co-workers. *Smith v. St. Bernard's Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). A plaintiff can assert a claim for retaliation against a county pursuant to § 1983 if she shows (1) that the county "acted to inflict injury through an official proclamation or acts of the county's officers or through a pattern or custom" and (2) a constitutional injury. *Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir. 2002) (citing *Bechtel v. City of Belton*, 250 F.3d 1157, 1160 (8th Cir. 2001)).

In this case, defendants have presented sufficient evidence to create a genuine issue of material fact as to whether Massiet and Pulaski County acted with the requisite intent or are otherwise liable for Cloos's retaliation claims under Title VII, § 1983, or the Arkansas Civil Rights Act. Cloos offers no evidence that Pulaski County acted through an official proclamation or acts of its officers or through a pattern or custom. *See Fitzgerald*, 285 F.3d at 713. As evidence against Massiet, Cloos relies solely on Massiet's deposition testimony, in which Cloos says that Massiet admitted that he was angry about her EEOC charge and acted on that anger. Massiet stated in his deposition testimony that he did not have a supervisory role within the investigations unit, and that

he was assigned not exactly to train Cloos, but just to "show her the ropes." Massiet admitted that

he was not happy about Cloos being transferred into the investigations unit, and that he believed she

was transferred into the unit because of her discrimination complaint. Although Massiet said that

he became upset when Cloos conducted interviews on a death scene that she was not supposed to

conduct, he also said that he did not tell witnesses not to talk to Cloos and that he never told other

people that he was going to try to run her off. Although later in his deposition testimony Massiet

admitted that he always had the new people do interviews, he also stated that he liked to do crime

scene interviews himself when assigned to do them to insure that they were done properly, and that

Cloos conducted the death scene interviews without going through him first.

As the party moving for partial summary judgment, Cloos bears the burden of showing that

there is no genuine issue of material fact for trial. Massiet's deposition testimony regarding his

position of authority over Cloos is muddled at best. Cloos's only evidence that Massiet had

decision-making authority over her employment is Massiet's statement that he was assigned to

"show Cloos the ropes." Massiet did not admit that he was assigned to "train" Cloos, and Massiet

stated that he did not have any kind of supervisory authority with respect to her employment. Thus,

there is a genuine issue of material fact as to whether or to what degree Massiet had any decision-

making authority over Cloos's employment sufficient to effectuate an adverse employment action.

*See St. Bernard's Regional Medical Ctr.*, 19 F.3d at 1255 (dismissing claims against co-workers

because liability under 42 U.S.C. § 2000e(b) attaches only to employers).

It is equally unclear whether Cloos's protected conduct was causally linked to how Massiet

treated her. *See Higgins*, 481 F.3d at 589. Massiet admitted that he was unhappy with Cloos's

transfer and her lawsuit and that he did not trust her. However, he also told her that he would train

her, that he would make her better than everybody else in the unit, and that he was willing to "start things anew" with her.  Thus, although Massiet admitted that he was unhappy with Cloos's lawsuit, it is unclear from his deposition testimony whether and to what degree his previous distrust of Cloos played any role in how he treated Cloos while training her.

Defendants have also presented evidence sufficient to create a genuine issue of material fact as to whether a reasonable employee in Cloos's position would have found Massiet's alleged retaliatory action materially adverse.  *See Higgins*, 481 F.3d at 589.  Examples of behavior that does not rise to the level of being materially adverse include "petty slights or minor annoyances that often take place at work and that all employees experience," "personality conflicts at work that generate antipathy," and "snubbing by supervisors and co-workers."  *Id*. at 589-90 (citing *Burlington Northern*, 548 U.S. at 68, 126 S. Ct. at 2415).  Lack of mentoring or supervision might constitute an adverse employment action where an employee can establish that she was "left to 'flounder' or was negatively impacted by the lack of supervision or mentoring."  *Higgins*, 481 F.3d at 590.

Although Massiet stated that he was unhappy with Cloos's transfer and her EEOC charge and lawsuit, and that he believed that Cloos had caused Deputy Jody Gieber to be removed from the investigations unit, he also testified that he was willing to start anew with Cloos and that he was going to train her to be the best investigator in the unit.  Other than her allegations that Massiet was unapproachable, refused to train her, and did not allow her to conduct interviews, Cloos offers no evidence to support the conclusion that she suffered a materially adverse action that was caused by Massiet's alleged retaliatory conduct.  In her brief in support, Cloos references only Massiet's alleged failure to provide her with sufficient training and that Massiet interfered with her training because of her discrimination claims.  She does not argue that Massiet's alleged interference with

her training resulted in diminution of title, salary, or future career prospects. *See Higgins*, 481 F.3d at 585, 590-91. In Cloos's diary she admits that she had some interaction with Massiet and that he told her that he would train her to be the best investigator in the unit. Furthermore, the Pulaski County policies and procedures manual provides that transfer from patrol division to investigations division is a lateral transfer and does not effect pay or benefits, and Major Bob Scarborough testified in deposition testimony that a promotion to the rank of sergeant is based on testing, not experience in investigations, and that there is no difference between pay for a patrol deputy and an investigator. Thus, there remains a genuine issue of material fact as to whether Cloos suffered an adverse employment action that was materially adverse, since Massiet's alleged lack of supervision and mentoring, standing alone, is insufficient to create liability on Cloos's claim for retaliation under Title VII or § 1983. *Id.* at 590.

Regarding Cloos's retaliation claim under the Arkansas Civil Rights Act, Cloos says only that Massiet's previously described conduct amounted to "interfere[nce] with Cloos's traning because of her discrimination claims," in violation of Ark. Code Ann. § 16-123-108(b). The Arkansas Civil Rights Act provides that "[n]o person shall discriminate against any individual because such individual in good faith has opposed any act or practice made unlawful by this subchapter or because such individual in good faith made a charge . . . under this subchapter." ARK. CODE ANN. § 16-123-108(a). The Act further provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this subchapter." ARK. CODE ANN. § 16-123-108(b). Although retaliation claims under the Arkansas Civil Rights Act are to be analyzed under the same framework as Title VII retaliation claims, the Arkansas Civil Rights Act contains broader prohibitions on retaliation by making it

14

"unlawful to coerce, intimidate, threaten, or interfere" with an employee for making a charge.  *See Faircloth v. Bowers*, 2007 WL 593042, at *9 (E.D. Ark. Feb. 20, 2007) (quoting ARK. CODE ANN. § 16-123-108(b)).

As the Court has already noted, Massiet testified, and Cloos admitted, that Massiet wanted to start anew with Cloos, that he was willing to train her, and that he was going to make her the best investigator in the unit.  Although Cloos alleges that Massiet's conduct interfered with her training, she does not specify how her training was deficient, and there exists a genuine issue of material fact regarding whether and in what ways her training was deficient.  Furthermore, even if Massiet did interfere with her training, Cloos does not explain how "interference with training" constitutes interference with her exercising her rights under the Arkansas Civil Rights Act, nor has the Court found a case holding that interference with training is sufficient to create liability under Ark. Code Ann. § 16-123-108(b).  As the moving party, Cloos bears the burden of proving that there is no genuine issue of material fact regarding Massiet's liability for retaliation under the Arkansas Civil Rights Act, and Cloos has failed to meet that burden.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment, which the Court treats as a motion *in limine*, is DENIED.  Document #42.  Plaintiff Cloos's motion for partial summary judgment on liability regarding her retaliation claims is DENIED.  Document #45.

IT IS SO ORDERED this 27th day of August, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT COURT

15